Our next case this morning is United States v. Layfield. Mr. Bailey. Good morning, Your Honor. You may proceed. Okay. Thank you, Your Honor. May it please the Court. Your Honor, we present this appeal today with regards to a trial that was conducted in the Southern District, Illinois, September 11, 2020, involving Mr. Layfield. We present to the Court today the sufficiency of the evidence. We argue that at this present time there was no evidence in trial to suggest that Mr. Layfield used a weapon in the altercation with the victim in this case. A little background of the case, Your Honor. Mr. Layfield was serving a sentence under the Western District of Kentucky. He was moved to the Southern District to finish his time. During that process, he was involved in the altercation with another inmate and was alleged that he used a knife in that altercation. The Special Investigation Office investigated the case and they obtained a video. The video was inconclusive of whether or not Mr. Layfield used a knife or anything. In fact, the video only consisted of more or less than probably ten seconds. It showed Mr. Layfield and the victim in the altercation, and for the next five seconds, they was inside the prison room where the video could not observe anything happening. Later, the video observed Mr. Layfield walking out the room and walking into another room, and two witnesses that was in the other room testified to the point that Mr. Layfield dropped a knife and one of the witnesses picked up the knife and hid it in the laundry room. Well, throughout the whole case, no one, no witnesses, not even the victim himself, testified to the fact that Mr. Layfield used a weapon in this altercation. And I'm going to start with the victim himself. The victim himself only indicated that it looked like he may have had something in his hand during the altercation, but he was unsure whether or not anything happened. He also testified to the fact that once Mr. Layfield hit him, which again I'm saying that the altercation only lasted ten seconds, he fell back into the room and more than likely he indicated that he hit up against something, but he don't know where his injuries came from. The government presented two eyewitnesses to the altercation who indicated that Mr. Layfield dropped a knife inside another prison room, and the second witness argued that he went inside the room and they told him that Mr. Layfield dropped a knife and that's why he took the knife and hid it in the laundry room. Both of their testimonies may be true, but here was the key issue. Neither of them said, we never saw the fight. We never saw the fight. We just saw a knife inside the room. That was it. Upon finding this knife by the investigation officer, one thing that struck me and probably struck everybody in the courtroom is the special investigation officer learned of the weapon approximately about 3 p.m. the next day following the incident. Another investigation officer indicated that after that investigation officer learned of the weapon, he went and looked for it and he found the weapon. But what was strange about that, on his record, he indicated he found the weapon at approximately five hours before the witness indicated what the weapon was. And not only did he find it five hours before, he found three other weapons during that particular time. Also was not involved in the trial was at the same time of this fight, there was another fight inside the same courting of the prison. So basically it was two fights. So this special investigation officer indicated that five hours before he learned of the location and the identification of the weapon, he found three weapons. When he came to the second witness to ask him to identify the weapon, he only brought one of those weapons. And that witness indicated that that was the weapon. Well, if that was the weapon, and you indicated you never saw the fight, how did you know that was the weapon used in the fight? And it's something I feel that... Mr. Bailey, you are one minute to your remodel time. You reserved five minutes to remodel. All right. Your Honor, I would like to just conclude that based on the evidence that was presented in court, there was no evidence under the standard of review under the Seventh Circuit to show that Mr. Layfield had a weapon in his hand and or used a weapon in the altercation in this particular incident. Thank you. Ms. Scott. Thank you. May it please the court. This is Angela Scott on behalf of the Appalooh United States. First, Your Honor, I wanted to point out that Mr. Bailey, on behalf of the appellant, is only challenging one element of the conviction on count one, which is that he used a dangerous weapon while committing the assault. He's not challenging the convictions on count two, which is that he possessed Government Exhibit 8 on September 1st, or count three, which is that he obstructed justice by trying to corruptly conceal Government Exhibit 8 on September 1st. So one is left to conclude then that he is conceding both that he possessed it and attempted to conceal it, but that he didn't use it to assault Mr. Daly. And he can't now, of course, argue that he did, that he didn't. What we argue, Your Honor, first off, is that, again, Mr. Bailey has kind of a myopic view of the evidence here. Mr. Daly, while he could not say he could not identify the entirety of Government Exhibit 8, which the government alleged was the weapon that was used during the assault, he did say that he saw something, and I'm quoting him, something shaped like a tip of something, like a triangle shape that was gray in color, that was consistent with a weapon, and he was able to identify the tip of Government Exhibit 8 as what he saw being used by Mr. Layfield. Also, I wanted to point out that while the video, Mr. Bailey continues to say the video was inconclusive, that a weapon was used, there was also testimony by Mr. Daly, and that was corroborated by Correctional Officer Shute, that Mr. Daly, during the altercation, was making stabbing motions toward Mr. Daly with his left arm, his left hand, which is where the weapon was allegedly being held by him. So, I would argue that there is some evidence from Mr. Daly that there was a weapon in Mr. Layfield's hand. I would also argue, Your Honor, that Inmate Phipps testified, and this is, Inmate Phipps is the person whose cell he went into immediately after the assault, and before there was any chance for him to get rid of any weapon. He went into Mr. Phipps' cell and asked Mr. Phipps to put up this weapon, and this is the weapon that he's admitting possession of. So, Mr. Phipps said, yes, Government Exhibit 8, that is the weapon that Mr. Layfield said, hide for me, put up for me, and then he said, I didn't want anything to do with it, so I called up Marcus Spragans, that was the other person who testified at the trial, and Mr. Spragans said, Government Exhibit 8, that is the weapon that I took from Mr. Phipps, and I hid in the laundry room, and Mr. Phipps told me later, that was the weapon that Mr. Layfield used on Mr. Daly, and most importantly, and what Mr. Daly ignores, is the testimony that Mr. Spragans gave, which was that he saw Mr. Layfield with that very same weapon, Government Exhibit 8, two weeks before the incident in question. We would also point to his injury. Mr. Daly testified that he did not hit his hand, his arm, on anything in his cell that would have caused the injury that he suffered, and I included a picture of that injury in the brief, and he also said that because of the way that they were positioned in the cell, that if he would have hit his arm on anything, it would have been his other arm. So I think what's very, very important is the testimony of the nurse, excuse me, Nurse Brown, who said that it was unlikely that the injury that he sustained, this cut that was 1.25 inches long and 0.25 inches deep, would have been caused by striking against an object such as a locker, unless it was an exceptionally, I'm quoting, an exceptionally sharp object, or the wound was located over a bony prominence, and it was not located over a bony prominence. He said because where it was located was, quote, an impact on soft tissue would normally absorb impact, end quote. He said it could, and then when shown Government Exhibit 8, he testified that Government Exhibit 8 could have caused the injury to Dilley's arm. It's also important to note that immediately after the assault, when Mr. Dilley was taken for his medical assessment, he told the person who was treating him, Nurse Brown, that he had been attacked by an inmate with a knife. Now, the jury was told everything that Mr. Bailey raises to this court, that officer's shoot report indicated that he found the weapon at 10 a.m., but that Officer Serio said that the interview of Spragans, which led to the recovery of the weapon, was at 3 a.m., that there were two other weapons found that were not documented in any report and that were not shown to DeMarcus Spragans. And by the way, the reason they were not shown to DeMarcus Spragans was adequately explained by Officer Shute because they had absolutely nothing with the description that was given by Spragans. Officer Shute testified that these other weapons were big nails and they had nothing on them. There was no rubber, no white pieces on them, no rubber band. He said that they had nothing on them that appeared to be blood, so the weapon that he took to DeMarcus Spragans for his identification was the weapon that matched the description Spragans gave him and what he believed to appear to have blood on it. He also indicated that the reason he did not put the other two weapons that he found in a report is because he was not going to put weapons on Mr. Layfield that were not relevant to the investigation. And finally, the jury was aware, again, of the DNA, that there was DNA testing that could neither include nor exclude either the victim or Mr. Layfield and that there were no fingerprints suitable for comparison found on the knife. Not that there were no fingerprints found on the knife, but that there were no fingerprints suitable for comparison. Again, Your Honor, the jury was uniquely qualified to weigh the alleged discrepancies or shortcomings in the evidence against the other ample evidence of the defendant's guilt, determine the relative importance of that evidence to its verdict, and reach its conclusion. This is something that the defendant is asking this court to reweigh the evidence and ignore the jury's credibility findings, and we're asking the court not to respect the jury's decision and to affirm the conviction on count one. And if there's no other questions, I don't really think I have anything else to add. All right. Thank you very much. Okay. And Mr. Bailey, rebuttal. Your Honor, I would just like to say in rebuttal, again, there was no evidence in this particular situation. None of the witnesses saw the altercation to say that Mr. Layfield even had a weapon at all. And for this special investigator to find three knives and only bring one knife to that witness, the exact witness who said that I never, never saw the fight at all, bring that one knife to him and say, is this the knife that you found, which was no DNA, no fingerprints. And this knife had supposed to have exchanged hands with more than two to three people, but there was no fingerprints. And the government talks about, well, that was the only knife that had blood on it. And the blood comes back to no one. If the court would look at those pictures and see how much blood that was there, there should have been some type of evidence. And then one other important factor, none of the investigation officers after the jury heard and indicated that none of those investigation officers went in to look over to that room, to investigate that room, to determine whether there was blood in the room. None of them did that upon the question that was asked to them. So there was no other circumstantial evidence to offset it. If they would have went into that room, maybe we would have something different. But we don't. And all we've got is circumstantial evidence, circumstantial evidence that could go both ways in this particular incident, but nothing on that video and nothing that the witness said. And more importantly, the victim himself indicated on cross-examination that he only saw what he believed to be a silver item, but he didn't know what it was because the fight happened so quickly within 10 seconds. So we asked this court to – I'm absolutely asking this court to review this and to send it back for a retrial on this particular case because, again, if you don't have no evidence, you don't have a conviction. Counselor Resch. Thank you very much. And our thanks to both counsel. The case is taken under advisement.